UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| RAINERI CONSTRUCTION, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:12-CV-2297 (CEJ) |
| KEITH TAYLOR, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss Counts I through IV of the first amended complaint for failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has filed a response in opposition and the issues are fully briefed. Also before the Court is the motion of the individual defendants to dismiss the claims against them in Count VIII. Plaintiff has conceded this motion.

I. **Background**

Plaintiff Raineri Construction, LLC (Raineri) is a construction contractor. Defendant Carpenters District Council of Greater St. Louis and Vicinity (CDC) is a labor union that represents carpenters and other skilled workers in collective bargaining with construction contractors. The individual defendants, Keith Taylor, Scott Byrne, Paul Higgins, Al Bond, Mark Kabuss, Michael Ebert, Christopher Woods, George Wingbermuehle III, Tod Wingbermuehle, and Terry Nelson, are officers or members of the CDC.

In the first amended complaint, plaintiff asserts claims of violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968

(Counts I-IV), tortious interference with business relations (Count V), civil conspiracy (Count VI), injurious falsehood (Count VII), and unfair labor practice, in violation of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 158(b)(4) (Count VIII). Plaintiff alleges that, beginning in November 2011 and continuing "to date," defendants implemented a conspiracy to extort money and inflict substantial damages upon plaintiff by making threats of physical violence and property damage, stalking and harassing plaintiff's management and employees, defamation, filing frivolous complaints with the St. Louis City Building Department and the U.S. Department of Labor-Occupational Safety and Health Administration, and unlawfully interfering with plaintiff's existing and prospective business relations.

Defendants filed the instant motions seeking to dismiss plaintiff's amended complaint. Defendants argue that plaintiff does not have standing to assert claims based on RICO and that plaintiff has failed to state a claim in Counts I through IV.

II. **Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and

unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. See also id. at 563 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

### III. Discussion

#### A. Standing

Defendants argue that plaintiff does not have standing to assert RICO claims. "A RICO plaintiff only has standing if . . . he or she has been injured in his or her business or property by the conduct constituting a violation." Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 950 (8th Cir. 1999) (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 495-96 (1985)). "Thus, the two requirements for RICO standing are (1) an injury to 'business or property' (2) caused 'by reason of' a RICO violation." Id. "[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Gomez v. Wells Fargo, 676 F.3d 655, 660 (8th Cir. 2012) (quoting Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 728 (8th Cir. 2004)); Ironworkers Local Union 68 v. AstraZeneca, 634 F.3d 1352, 1361 (11th Cir. 2011) (A RICO plaintiff must allege an economic injury).

In the instant case, the first amended complaint contains claims of loss of business expectancies and personal injury to the owner of the plaintiff corporation that are insufficient on their own to support RICO standing. See Cox, Cox, Filo, Camel &

Wilson, LLC v. Sasol N. Am., Inc., 2013 U.S. Dist. LEXIS 120297, *8 (W.D. La. Aug. 21, 2013) (citing Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607 (5th Cir. 1998) ("[I]njury to mere expectancy interests . . . is not sufficient to confer RICO standing[.]"); Vickers v. Weeks Marine, Inc., 414 Fed.Appx. 656, 656 (5th Cir. 2011) ("[T]here is no recovery under RICO for personal injuries.").

However, plaintiff does allege that some of the defendants took actions that adversely affected the business, such as interfering with its current customer relationships, interfering with business operations, and causing property damage. [Doc. #32, at 8-15]. These types of allegations are sufficient to show economic loss, especially at this early stage of the litigation. Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002). Furthermore, a general allegation that defendants injured the plaintiff's business and/or property interests has been held to be sufficient to confer standing under RICO. See id. (citing NOW v. Scheidler, 510 U.S. 249, 256 (1994)). Thus, the Court finds that plaintiff has standing to bring its RICO claims (Count I-IV).

### B.  Count I: Violation of 18 U.S.C. § 1962(c)

Defendants further argue that plaintiff has failed to properly plead its RICO claims. Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering[.]" 18 U.S.C. § 1962(c). Thus, in order to sufficiently plead a violation under § 1962(c), a plaintiff must show that the defendant engaged in (1) the conduct of an enterprise; (2) through a pattern

of racketeering. Schoedinger v. United Healthcare of Midwest, Inc., 557 F.3d 872, 876 (8th Cir. 2009).

1. **Enterprise**

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." Elliot v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989). An enterprise can include any "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, the alleged enterprise must be an entity *separate and distinct* from the pattern of racketeering activity in which it engages. United States v. Turkette, 452 U.S. 576, 583 (1981). In other words, "there must be some showing of an ascertainable structure beyond that inherent in the pattern of racketeering activity." Rao v. BP Products North America, Inc., 589 F.3d 389, 399 (7th Cir. 2009).

In addition, a plaintiff must show that the association-in-fact possesses three structural features: (1) a common purpose or interest; (2) relationships among those associated with the enterprise; (3) and longevity sufficient to permit the associates to pursue the enterprise's purpose. Boyle v. United States, 556 U.S. 938 (2009). Plaintiff must show that each of the "defendants conducted or participated in the conduct of the 'enterprises's affairs,' not just their own affairs." Reeves v. Ernst & Young, 507 U.S. 170, 185 (1993).

a. **Separate and Distinct**

"In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, [a court] must 'determine if the

5

enterprise would still exist were the predicate acts removed from the equation.'" Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 354-55 (8th Cir. 2011) (quoting Handeen v. Lemaire, 112 F.3d 1339, 1342 (8th Cir. 1997)); Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 770 (8th Cir. 1992) ("The focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offenses); see also Walters v. McMahen, 684 F.3d 435, 440 (11th Cir. 2001) ("An act of racketeering under RICO is commonly referred to as a 'predicate act.'").

In framing its RICO claims, plaintiff pleads the existence of two association-in-fact enterprises: (1) the Carpenters Enterprise and (2) the Carpenters Funds Enterprise. Plaintiff alleges that the legitimate purpose of the Carpenters Enterprise is to attract and retain members engaged in carpentry to provide manpower services to construction contractors. Plaintiff alleges that the legitimate purpose of the Carpenters Funds Enterprise is to provide cost-effective and qualified health insurance and pension plans to CDC members, retirees, and their families. The plaintiff further alleges that the individual defendants utilized both enterprises to further their illegitimate purpose of extorting money and property from plaintiff.

The Court finds that plaintiff has sufficiently alleged that the Carpenters Enterprise and the Carpenters Funds Enterprise are structures separate and distinct from the alleged acts of racketeering. If these two enterprises were to cease their alleged extortion against plaintiff, they would continue to exist as entities providing services to construction contractors and health insurance and pension plans. See United States v. Lemm, 680 F.2d 1193, 1201 (8th Cir. 1982) (An arson ring constituted as an enterprise because it carried on various other legitimate activities); compare to

6

Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 816 (8th Cir. 1992) (RICO claim dismissed because once the predicate acts of fraud were removed "the association-in-fact enterprise . . . had no form or structure."); Capital Active Funding, Inc. v. B&L Construction & Remondeling, 2011 WL 6099372, *4 (W.D. Tex. Dec. 7, 2011) (RICO claim dismissed because plaintiff alleged that the enterprise was created for the purpose of committing racketeering acts against plaintiff and for no other reason).

### b. Common Purpose or Interest

"The enterprise itself, broadly speaking, must be marked by a common purpose[.]" Handeen, 112 F.3d at 1351. A complaint must "adequately assert that a mixture of individuals . . . joined together for the purpose of engaging in a common course of conduct." Schuster v. Anderson, 378 F. Supp. 2d 1070, 1094 (N.D. Iowa 2005).

In the instant case, plaintiff alleges that the individual defendants associated together for defined legitimate and illegitimate purposes. The Court finds that these allegations are sufficient to plead a common purpose. See id. (Despite being "sparse in this regard," the court found that plaintiff showed a common purpose by alleging that the enterprise was formed "for the purpose of establishing vehicles to be used to solicit investors in various fraudulent investment schemes."); see also Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 306 (S.D.N.Y. Feb. 19, 2010) ("The Complaint alleges that . . . individual defendants associated together for the common purpose of carrying out the scheme of buying journal subscriptions at lower rates . . . That takes care of [the] purpose requirement.").

### c. Relationships

An enterprise is further "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various *associates function as a continuing unit*.'" Boyle, 556 U.S. at 944-45 (citing Turkette, 452 U.S. at 583) (emphasis added). In order "to satisfy the 'relationship' requirement for an association in fact at the pleading stage[,]" the question a court must ask is whether "all of the defendants in the association in fact were working together on a common scheme[.]" Elsevier Inc., 692 F. Supp. 2d at 306. "Members of the group need not have fixed roles; different members may perform different roles at different times." Id. However, the plaintiff must allege facts "tending to make it plausible that the Court is confronted with something more than parallel conduct of the same nature and in the same time frame by different actors in different locations." Id. at 306-307.

Plaintiff's complaint names ten individual defendants. Plaintiff lists these defendants as officers or agents of the CDC who manage or operate the affairs of the Carpenters Enterprise and the Carpenters Funds Enterprise. Plaintiff alleges specific facts to support that seven of the ten individual defendants (Keith Taylor, Scott Byrne, Mark Kabuss, Michael Ebert, Christopher Woods, George Wingbermuehle III, and Tod Wingbermuehle) were participants in committing acts of racketeering, including aggravated stalking, harassment, threats of physical violence and property damage, defamation, and filing false reports with regulatory agencies in order to coerce plaintiff into signing a collective bargaining agreement with defendant CDC. Thus, plaintiff has sufficiently alleged facts tending to make it plausible that these seven defendants had roles in a racketeering scheme against plaintiff, were working together as a continuing unit, and had some part in directing the enterprise's affairs. See Ouwinga v. Benistar

419 Plan Services, Inc., 694 F.3d 783, 794 (6th Cir. 2012) (citing Boyle, 556 U.S. at 947) ("[T]he evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'").

However, nowhere in the complaint does plaintiff describe the involvement of Paul Higgins, Al Bond, or Terry Nelson as participants in the enterprise's racketeering activities. The complaint simply identifies these three individuals as agents of the CDC and, in a boilerplate fashion, states that they "participated in, authorized, or ratified" the enterprise's racketeering acts. Because plaintiff does not allege how these three defendants participated in the conduct of the enterprise's affairs, the Court must dismiss all claims against them. See Davies v. Genesis Med. Ctr., 994 F. Supp. 1078, 1089 (S.D. Iowa Feb. 12, 1998) (Plaintiff must allege how the defendant participated in the conduct of the enterprise's affairs); Elsevier Inc., 692 F. Supp. 2d at 308 ("Not a single fact is alleged as to any of these defendants tending to show that they exercised the slightest degree of control over either of the claimed enterprises."); Rosemann v. Sigillito, U.S. Dist. LEXIS 95629, * 35 (E.D. Mo. July 9, 2013) ("[I]t is not necessary that a RICO defendant have wielded control over the enterprise, but the plaintiff 'must prove some part in the direction . . . of the enterprises's affairs.'").

### d. Longevity

Plaintiff's complaint alleges that "[b]eginning on or about November 1, 2011 and continuing up to and including the present . . . the Defendants conspired to and did manage or operate the affairs of the Carpenters Enterprise and the Carpenters Funds Enterprise through a pattern of racketeering activity[.]" The Court finds that this is a

sufficient period of time to satisfy the longevity requirement. See Elsevier Inc., 692 F.Supp. 2d at 306 (one year is sufficient to show longevity).

## 2. Pattern of Racketeering Activity

After finding that plaintiff has met all the requirements necessary to plead a RICO enterprise, the Court must next determine whether there is a pattern of racketeering activity. Rao, 589 F.3d at 399; § 1962(c). The RICO statute defines the phrase "pattern of racketeering activity" as requiring the commission of at least two predicate racketeering offenses over a ten-year period. See § 1961(5). "The Supreme Court has held, however, that the minimum two acts are not necessarily sufficient and that a plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" Ouwinga, 694 F.3d at 795 (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 233 (1989)). "This is commonly known as the 'relationship plus continuity test.'" Saap Energy v. Bell, 2013 U.S. Dist. LEXIS 122496, *18 (W.D. Ky. Aug. 28, 2013).

The relationship requirement of the test is satisfied when a complaint alleges "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc., 492 U.S. at 233. In the instant case, plaintiff has sufficiently alleged predicate acts that relate to one another, that are designed to achieve the same result, and which include agents of defendant CDC functioning together to perform legitimate and illegitimate actions. Thus, plaintiff has satisfied the relationship prong.

The continuity requirement of the test is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that

by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. A plaintiff need only satisfy one type of continuity, either closed or open, in order to met this requirement. See US Airline Pilots Ass'n v. AWAPPA, LLC, 615 F.3d 312, 318 (4th Cir. 2010).

"To allege open-ended continuity, a plaintiff must plead facts that demonstrate a 'threat of continuity,' *i.e.*, facts that give rise to a reasonable expectation that the racketeering activity will 'extend[] indefinitely into the future.'" Id. (citing H.J. Inc., 492 U.S. at 242). "A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a 'built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity.'" Id. (citing GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001)).

Plaintiff alleges that its owner, Tony Raineri, was repeatedly informed by individual defendants that plaintiff's employees would be harassed until plaintiff signed a labor contract with the CDC. See Doc. #32, at ¶¶ 38, 40, 43, 46, 49. These allegations show that the predicate acts contained a built-in ending point, in that once plaintiff signed the contract the racketeering activity would cease. See id. ("An extortion campaign aimed at implementing [a union contract] might last a long time, but it clearly has a 'built-in ending point' precluding open-ended continuity."); Wild Edibles Inc. v. Industrial Workers of World, 2008 WL 4548392, *2 (S.D.N.Y. Oct. 9, 2008) ("Nor does the Amended Complaint sufficiently plead 'open-ended' continuity, because the finite purpose of defendants' alleged scheme—'to put Plaintiff out of business . . . unless Plaintiff . . . agrees to the [] terms in a collective bargaining

agreement'—is inherently short-lived."). Thus, plaintiff cannot demonstrate open-ended continuity.

Turning to closed-ended continuity, the Eighth Circuit has held that "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time." Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008). The Eighth Circuit has defined "substantial period of time" as "a period of time lasting at least one year[.]" United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006); see also Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215-16 (8th Cir. 1993) (Activity lasting between ten and eleven months is insubstantial.). This requirement exists "because too few acts would suggest that the defendants were engaged in only sporadic activity, . . . and too short a period of time would suggest that defendants were not engaged in long term criminal conduct." Giuliano v. Fulton, 399 F.3d 381, 387 (1st Cir. 2005) (internal quotations omitted).

In order to determine whether plaintiff alleged a substantial period of time, the Court must pinpoint "the predicate acts purportedly marking the beginning and end of the alleged scheme." Primary Care Investors, Seven, Inc., 986 F.2d at 1215. "In determining the duration of a pattern of racketeering activity, courts focus solely on the predicate acts of racketeering each defendant is alleged to have committed." Int'l Broth. of Teamsters v. Carey, 163 F. Supp.2d 271, 280 (S.D.N.Y. Oct. 1, 2001).

The first date alleged in the complaint is November 1, 2011, in which plaintiff alleges, in a boilerplate fashion, that beginning on that date "and continuing up to and including the present . . . the Defendants conspired to and did manage or operate the affairs of the Carpenters Enterprise and the Carpenters Funds Enterprise through a

12

pattern of racketeering activity[.]" Doc. 32, at ¶ 33. However, the Court declines to consider November 1, 2011 as the beginning date of the alleged scheme. Plaintiff does not allege any facts to support that any of the defendants engaged in specific predicate acts on or throughout November 2011. See <u>Spool v. World Child Intern. Adoption Agency</u>, 520 F.3d 178, 184 (2d Cir. 2008) ("The relevant period . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place.").

Plaintiff further alleges that on "numerous occasions" beginning on an unspecified date in December 2011, "[d]efendant Keith Taylor threatened customers of Raineri[.]" Doc. #32, at ¶ 53. Plaintiff alleges that on April 3, 2012, "an individual under the control of Defendants, contacted OSHA and complained that Raineri's Cigno Dental construction project was hazardous and unsafe." <u>Id.</u>, at ¶ 59. The remainder of the alleged predicate acts occurred between August 23, 2012 and November 9, 2012, which mostly consist of harassment and stalking. <u>Id.</u> at ¶ 38-60.

The Court is inclined to consider the December and April allegations to be sporadic activity and not evident of a pattern of racketeering, thus limiting the relevant time period to a two month span. However, even without analyzing whether the time period should be limited, the predicate acts allegedly taking place from December 2011 to November 8, 2012 is a ten- to eleven-month period, which is insufficient on its own to satisfy open-ended continuity. See <u>Primary Care Investors, Seven, Inc.</u>, 986 F.2d at 1215-16 (Eleven months is not a substantial period of time). Plaintiff's allegation that defendants have continued a pattern of racketeering up to the present date does not change the outcome. Plaintiff has not presented any specific facts or dates to

support the continuation of predicate acts against plaintiff. See generally Crest Construction II, Inc. v. Doe, 660 F.3d 346 (8th Cir. 2011) (Court found complaint did not allege open-ended continuity despite plaintiff's allegation that the predicate acts occurred from "December 2003 through January 2004 and continuing to date.").

Thus, plaintiff fails to satisfy the pattern of racketeering activity requirement in order to properly allege an enterprise under RICO. Count I will be dismissed.

### C.     Counts II-IV: Violation of 18 U.S.C. § 1962(d)

Section 1962(d) provides, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "[A] conspiracy is not a RICO enterprise unless it has some enterprise-like structure." Limestone Development Corp. v. Village of Lemon, 520 F.3d 797 (7th Cir. 2008). "The prevailing law in the Eighth Circuit is that, in order '[t]o establish the charge of conspiracy to violate the RICO statute,' a party must prove: (1) *that an enterprise existed*; (2) that the enterprise affected interstate or foreign commerce; (3) that the defendant associated with the enterprise; and (4) 'that the defendant objectively manifested an agreement to participate . . . in the affairs of [the] enterprise.'" Rosemann v. Sigillito, 2013 U.S. Dist. LEXIS 95629, *50-51 (E.D. Mo. July 9, 2013) (emphasis added) (quoting U.S. v. Darden, 70 F.3d 1507, 1518 (8th Cir. 1995)).

As discussed above, the Court finds that plaintiff has failed to show a pattern of racketeering activity necessary to plead the existence of a RICO enterprise. "Because a showing of the existence of a RICO enterprise is a necessary element of a claim under 18 U.S.C. § 1962(d)," Counts II, III and IV will be dismissed. See id.

D.  Dismissal of State-Law Claims

Defendant argues that the Court should decline to exercise supplemental jurisdiction over the state-law claims asserted in Counts V, VI and VII. A district court "may decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court has original jurisdiction over the plaintiff's remaining federal-law claim in Count VIII. Therefore, the Court will continue to exercise supplemental jurisdiction over the state-law claims.

* * *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief [Doc. #9] is **granted as to Counts I-IV of the first amended complaint and denied in all other respects.**

**IT IS FURTHER ORDERED** that the motion of defendants Keith Taylor, Scott Byrne, Paul Higgins, Al Bond, Mark Kabuss, Michael Ebert, Christopher Woods, George Wingbermuehle III, Tod Wingbermuehle, and Terry Nelson to dismiss Count VIII against them for failure to state a claim [Doc. # 40] is **granted.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2014.