UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RAINERI CONSTRUCTION, LLC,          )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )          Case No. 4:12-CV-2297 (CEJ)
                                    )
KEITH TAYLOR, et al.,               )
                                    )
          Defendants.               )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss Counts I through VII of plaintiff's second amended complaint for failure to state a claim for relief, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response in opposition and the issues are fully briefed.

### I.    Background

Plaintiff Raineri Construction, LLC (Raineri) is a construction contractor. Defendant Carpenters District Council of Greater St. Louis and Vicinity (CDC) is a labor union that represents carpenters and other skilled workers in collective bargaining with construction contractors. The ten individual defendants, Keith Taylor, Scott Byrne, Paul Higgins, Al Bond, Mark Kabuss, Michael Ebert, Christopher Woods, George Wingbermuehle III, Tod Wingbermuehle, and Terry Nelson, are officers or members of the CDC.

In the second amended complaint, plaintiff asserts claims of violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (Counts I-IV), tortious interference with business relations (Count V), civil conspiracy (Count VI), injurious falsehood (Count VII), and unfair labor practice in

1

violation of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 158(b)(4) (Count VIII). Plaintiff alleges that beginning in November 2011 and continuing to date, defendants have engaged in a conspiracy to extort money and inflict substantial damages upon plaintiff by threatening physical violence and property damage, stalking and harassing plaintiff's management and employees, defamation, filing frivolous complaints with the St. Louis City Building Department, the St. Louis County Department of Health, and the U.S. Department of Labor-Occupational Safety and Health Administration, and unlawfully interfering with plaintiff's existing and prospective business relations.

Defendants filed the instant motion seeking to dismiss plaintiff's second amended complaint. Defendants argue that plaintiff has failed to state a claim in Counts I through VII.[1]

## II.   Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will

---

[1] Count VIII, which was previously dismissed as to all individual defendants, is not challenged in the instant motion. Defendant CDC has filed an answer to Count VIII.

ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim.  Id.  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp., 550 U.S. at 570; see also id. at 563 (stating the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.").  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555.

When ruling on a motion to dismiss, a court generally may not consider matters outside the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  It may, however, consider matters of public records, materials that do not contradict the complaint, exhibits attached to the pleadings, and materials necessarily embraced by the complaint.  Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010).  In this case, defendants attached to their motion letters defendant sent to plaintiff's customers—documents referred to by plaintiff in its complaint.  These letters are materials necessarily embraced by the complaint, and the Court may consider them in ruling on the motion to dismiss the second amended complaint.

### III.  Discussion

#### A.  RICO Claims

Defendants first argue that plaintiff has failed to properly plead its RICO claims.  RICO prohibits a person from engaging in a pattern of racketeering activity or from using proceeds derived from racketeering activity so to affect an interstate enterprise in one of three ways:  (1) investing the income derived from a pattern of racketeering in the enterprise, § 1962(a);  (2) acquiring or maintain an interest in an enterprise through a pattern of racketeering, § 1962(b);  or (3) conducting the

3

affairs of an enterprise through a pattern of racketeering, § 1962(c). Section 1962(d) also prohibits conspiring to violate subsections (a), (b), or (c). Count I alleges a violation of § 1962(c), while Counts II-IV allege that defendants violated § 1962(d) by conspiring to violate (c), (a), and (b), respectively.

To prevail on a RICO claim under any of the subsections of § 1962, a plaintiff must prove both the existence of an enterprise and a pattern of racketeering within the enterprise. McDonough v. Nat'l Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997); see also Beck v. Prupis, 529 U.S. 494, 504-06 (2000) (resolving a circuit split in holding that a RICO conspiracy charge under § 1962(d) also requires pleading predicate acts of racketeering). In dismissing plaintiff's first amended complaint, the Court found that plaintiff had sufficiently pled the existence of an enterprise within the meaning of RICO. Raineri Constr., LLC v. Taylor, No. 4:12-CV-2297 (CEJ), 2014 WL 348632, *5 (E.D. Mo. Jan. 31, 2014). The Court found, however, that plaintiff failed to meet the continuity requirement for pleading a pattern of racketeering activity. Raineri Constr., LLC, 2014 WL 348632 at *8. In the instant motion, defendants argue that plaintiff has failed to sufficiently plead a pattern of racketeering activity, because the alleged instances of misconduct are not predicate acts for a RICO claim. If a plaintiff fails to present sufficient evidence as to any one element of a RICO claim, the entire claim fails. Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008).

### 1. Predicate Acts

As set forth in RICO, a "pattern of racketeering activity" requires the commission of at least two acts of a racketeering offense over a ten-year period. § 1961(5); see Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 488 (1985)

(adopting the term "predicate acts"). The racketeering activity in which plaintiff alleges defendants engaged includes extortion, aggravated stalking, stealing, harassment, threats of physical violence and property damage, defamation, and the filing of frivolous complaints to governmental agencies. [Doc. #60, ¶¶ 33-34, 37]. Section 1961(1) of RICO contains an exhaustive list of the offenses that qualify as "racketeering activity." Beck, 529 U.S. at 497 n.2 (2000). Section 1961(1)(A) defines the state laws, punishable by imprisonment for more than one year, that qualify as racketeering activity and may serve as predicate acts for a RICO claim. The enumerated laws include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance." § 1961(1)(A). Plaintiff has not alleged any of these crimes under Missouri law. Section 1961(1) also includes acts that are indictable under Title 18 of the United States Code, labor violations under Title 29, and securities and narcotics violations punishable under federal law. The only charge plaintiff has alleged that qualifies as racketeering activity under § 1961(1) is the federal crime of extortion under the Hobbs Act, 18 U.S.C. § 1951.

Under the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." § 1951(b)(2). Plaintiff alleges that defendants committed extortion through their attempts to obtain money and property from plaintiff, including contributions for insurance and pension benefits, dues and fees for CDC members or prospective CDC members plaintiff employed, by causing plaintiff's employees, job applicants, and management to fear for their safety and by causing plaintiff's customers to cease business with plaintiff out of

fear for the well-being of their businesses. [Doc. #60, ¶ 35]. Defendants, in contrast, characterize their acts as involving a "non-violent labor dispute with [plaintiff] in an attempt to sign that company to a collective bargaining agreement" and "an information campaign to bring the labor dispute to the public's attention, including [plaintiff's] customers and potential customers." [Doc. #64, p. 5].

Defendants rely upon United States v. Enmons, 410 U.S. 396 (1973), in support of their argument that plaintiff has failed to plead extortion. The Supreme Court in Enmons held that the Hobbs Act "does not apply to the use of force to achieve legitimate labor ends." 410 U.S. at 401. The reasoning in Enmons created what courts have titled "the claim of right defense" to extortion under the Hobbs Act. See, e.g., United States v. Sturm, 870 F.2d 769, 772 (1st Cir. 1989). A claim of right defense provides that a person with a lawful claim of right to property cannot be liable for wrongfully acquiring it. United States v. Castor, 937 F.2d 293, 299 (7th Cir. 1991).

In Enmons, union members sabotaged their employer's property during a strike to obtain higher wages and other employment benefits per a collective bargaining agreement. 410 U.S. at 398. The Supreme Court determined that acts of violence that occur incident to an attempt to obtain a legitimate union objective may be punishable under state law, but are not punishable under the Hobbs Act. Id. at 411-12. For the Hobbs Act to apply, the obtaining of the property itself must be wrongful. The examples Enmons provided of illegitimate union objectives include "the exaction of personal payoffs, or the pursuit of 'wages' for unwanted or fictitious services." Id. at 407. In those instances, the alleged extortionists would have no lawful claim to the property. Id. at 400. The Eighth Circuit subsequently

agreed with the reasoning in Enmons, holding that "the Hobbs Act does not cover coercive action by unions in pursuit of legitimate labor goals of higher wages or increased benefits." United States v. French, 628 F.2d 1069, 1075 (8th Cir. 1980). If the labor objective sought is a not a wrongful taking, thus, it is not extortion under the meaning of the Hobbs Act. Id. Both the ends and the means must be unlawful to constitute federal extortion in the context of a labor dispute. Beyond striking for higher wages under a collective bargaining agreement, however, Enmons did not set forth what other activity would constitute "legitimate labor ends." 410 U.S. at 407.

Here, where the parties are engaged in a labor dispute, plaintiff states that "the legitimate purpose of the Carpenters Fund Enterprise was to provide cost-effective and qualified health insurance and pension plans to CDC members, retirees and their families." [Doc. #60, ¶ 27]. Plaintiff alleges defendants' "illegitimate purpose" was to deprive plaintiff of "its right to control and operate its business free from the extortionate conduct" of defendants, or to "drive [plaintiff] out of business." [Doc. #60, ¶¶ 21, 35]. Defendants assert that their objective was for plaintiff to enter into a collective bargaining agreement with the CDC. Defendants cite to section 8(f) of the National Labor Relations Act (NLRA), which states that it is not an unfair labor practice for a construction industry employer (such as plaintiff) and a labor organization of which construction employees are members (such as CDC) to enter into a collective bargaining agreement prior to demonstrating majority support among the employer's workers. 29 U.S.C. § 158(f); see also Bldg. & Constr. Trades Council v. Assoc. Builders and Contractors of Mass., 507 U.S. 218, 230 (1993) (Section 158(f) "explicitly permits employers in

7

the construction industry — but no other employers — to enter into prehire [collective bargaining] agreements."). Therefore, defendants conclude, since § 158(f) authorizes the CDC to enter into a "pre-hire" agreement with plaintiff, the union's objective was lawful and falls within the Enmons claim of right defense to extortion under the Hobbs Act.

Section 8(f) of the NLRA was designed as an exception to the "general rule precluding a union and an employer from signing 'a collective-bargaining agreement recognizing the union as the exclusive bargaining representative when in fact only a minority of the employees have authorized the union to represent their interests.'" Jim McNeff, Inc. v. Todd, 461 U.S. 260, 265 (1983) (quoting NLRB v. Local 103, Int'l Assoc. of Bridge Workers (Higdon), 434 U.S. 335, 344-45 (1978)). This authorization "does not mean, however, that a union may legitimately use an unlimited array of coercive tactics to secure such an agreement with an employer." United States v. Larson, 807 F. Supp. 2d 142, 158 (W.D.N.Y. 2011). Rather, as the Supreme Court has noted, in enacting this construction industry exception, "Congress was careful to make its intention clear that prehire agreements were to be arrived at voluntarily, and no element of coercion was to be admitted into the narrow exception." Local 103, 434 U.S. at 348 n.10.

Here, the parties have not entered into a pre-hire agreement, and the allegations do not indicate "an attempt to secure a voluntary pre-hire or collective bargaining agreement between a willing construction employer and a union, as permitted by section 158(f)." Larson, 807 F. Supp. 2d at 158. Rather, the complaint alleges that defendants used a variety of coercive tactics to force plaintiff into a collective bargaining agreement. See A. Terzi Prods. v. Theatrical Protective

<u>Union</u>, 2 F. Supp. 2d 485, 507 (S.D.N.Y. 1998) (holding that <u>Enmons</u> did not apply to defendants' collective-bargaining demands when the employer had no legal duty to recognize and bargain with the union). Defendants' objective is not "legitimate" under the <u>Enmons</u> defense simply because section 8(f) does not require the CDC to have majority employee support to approach the plaintiff for a collective bargaining agreement. As the Western District of New York explained in <u>Larson</u>:

> In a legitimate strike situation, the union has a lawful platform on which to seek higher wages and better terms for its members. However, when a union pursues agreements with new employers through primary tactics of violence, threats, and intimidation, it does not have a lawful platform on which to claim the property of the employer. The use of such tactics is therefore "wrongful" under the Hobbs Act.

807 F. Supp. 2d at 157 (citing <u>A. Terzi Prods.</u>, 2 F. Supp. 2d at 507 ("[F]orcing a collective bargaining agreement upon unwilling employees and their employer is 'wrongful' within the Hobbs Act's meaning; the union is an outside meddler with no lawful claim to the employer's property.")). Defendants, therefore, cannot use <u>Enmons</u> as a shield to liability under the Hobbs Act.

Defendants, relying upon <u>Sekhar v. United States</u>, 133 S. Ct. 2720 (2013), also argue that their conduct does constitute extortion under the Hobbs Act, because defendants did not actually "obtain" property or anything of value from plaintiff. However, the Hobbs Act includes attempts to obtain property, in addition to the actual obtainment of property. § 1951(a) ("Whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do" is in violation of this Act.). The Supreme Court's holding in <u>Sekhar</u> was premised on the fact that the intangible property at issue, the personal right of the general counsel for the New York State Comptroller's Office to make a recommendation to the Comptroller, was "certainly not *obtainable property* under

9

the Hobbs Act."  133 S. Ct. at 2726 (emphasis in original).  The requirement for establishing liability under the Hobbs Act is that "a defendant must pursue something of value from the victim that can be exercised, transferred, or sold" — not that a defendant must actually obtain that property for its actions to constitute extortion.  Id.  Here, plaintiff has alleged that the property defendants sought to obtain are health benefits pursuant to a collective bargaining agreement.  This allegation sufficiently states "obtainable property" to support a claim of extortion. See United States v. Larson, Nos. 07-CR-304S, et. al., 2013 WL 5573046, *5 (W.D.N.Y. Oct. 9, 2013) (stating that a "contract or contractual rights can be assigned, and therefore constitute something of value that can be exercised, transferred, or sold").  Plaintiff therefore has pled extortion under the Hobbs Act so as to provide requisite predicate acts to demonstrate a pattern of racketeering activity for its RICO claims.

## 2. Preemption

Defendants next contend that the alleged extortionate acts upon which plaintiff predicates its RICO claims are preempted by the NLRA.  The NLRA preempts state and federal court jurisdiction to remedy conduct arguably protected under § 7 or prohibited under § 8 of the Act.  Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. v. Lockridge, 403 U.S. 274, 276 (1971) (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959) ("Garmon preemption")). Garmon preemption does not apply where (1) Congress has carved out an exception to the National Labor Relations Board's (NLRB) jurisdiction; (2) the regulated activity touches interests "deeply rooted in local feeling and responsibility;" or (3) the activity regulated is "merely a peripheral concern" of

labor laws.  <u>Vaca v. Sipes</u>, 386 U.S. 171, 179-80 (1967).  If <u>Garmon</u> preemption is implicated, the courts are completely deprived of the power to act unless the NLRB determines that the challenged conduct is neither protected nor prohibited by the NLRA.  <u>Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters</u>, 436 U.S. 180, 199 n.29 (1978).

As to the first exception to <u>Garmon</u> preemption, Congress has listed two labor-related statutes in its definition of "racketeering activity," pertaining to actions concerning restrictions on payments and loans to labor organizations or embezzlement from labor funds.  18 U.S.C. § 1961(1)(C) (citing 29 U.S.C. § 186 and § 501(c)).  Plaintiff has not alleged violations under either of these statutes, so the first exception does not apply.  The second exception for regulated activities involving a primarily local concern likewise does not apply, since the relationship of two federal laws, RICO and the NLRA, is at issue here, rather than a state and federal law.  <u>Tamburello v. Comm-Tract Corp.</u>, 67 F.3d 973, 977 (1st Cir. 1995); <u>Teamsters Local 372, Detroit Mailers Union Local 2040 v. Detroit Newspapers</u>, 956 F. Supp. 753, 759 (E.D. Mich. 1997).

For the third exception to <u>Garmon</u> preemption, which involves determining whether the alleged acts are merely peripheral or collateral to labor laws, the Court must look to the underlying conduct complained of in the RICO claims.  Such a determination is "an intensely fact driven inquiry," and "[t]he focus must be on the particular allegations of the plaintiff's complaint to determine whether any or all of the claims may be resolved without determination of questions of federal labor law."  <u>Tamburello</u>, 67 F.3d at 979, n.6.  The Eighth Circuit has analyzed <u>Garmon</u> preemption as applied to RICO claims based upon predicate acts of extortion under

the Hobbs Act. Brennan v. Chestnut, 973 F.2d 644 (8th Cir. 1992) (examining Butchers' Union, Local No. 498 v. SDC Inv., Inc., 631 F. Supp. 1001 (E.D. Cal. 1986)). In Brennan, the Eighth Circuit held that the Hobbs Act, 18 U.S.C. § 1951, and an unspecified state law prohibiting extortion were generic in nature, so the court would need to look to labor laws to define the extortionate conduct alleged to be the predicate acts for plaintiffs' RICO claim. 973 F.2d at 646. Therefore, the Eighth Circuit held that Garmon preemption applied. Id. at 647.

The Eighth Circuit's holding in Brennan, however, is based upon the fact that the employer's conduct was unlawful only by reference to labor laws. Id. (citing to §§ 7 and 8 of the NLRA to determine that the pilots' claim that their employer violated compensation provisions of an existing collective bargaining agreement was unlawful). "Garden variety" labor dispute conduct, thus, falls within the exclusive jurisdiction of the NLRA. Teamsters Local 372, 956 F. Supp. at 761. In that instance, the conduct is unlawful only after referring to federal labor laws. See Mariah Boat, Inc. v. Laborers Int'l Union of N. Am., 19 F. Supp. 2d 893, 899-900 (S.D. Ill. 1998) (stating that "if the defendant's conduct is perfectly legal but for the proscriptions of the NLRA, then those determinations of potential illegality should be left to the expertise of the NLRB"). If the alleged predicate acts "exist independent of any unfair labor practice resolutions," however, "the NLRB's exclusive jurisdiction is not violated since the Court will not be forced to interpret labor law except as a collateral matter." MHC, Inc. v. Int'l Union, United Mine Workers of Am., 685 F. Supp. 1370, 1376-77 (E.D. Ky. 1988).

Some of the acts complained of here are unlawful independent of labor law. Unlike Brennan, the plaintiff has cited specific Missouri laws condemning the

underlying actions of stalking, stealing, and harassment to allege an independent basis of illegality for the defendants' extortionate conduct. Threats of or committed physical violence also form the basis of a claim under the Hobbs Act without the need to refer to labor laws. § 1951(a) (stating that whoever "commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section" is punishable under this Act); see Doc. # 60, ¶ 52 (warning Tony Raineri, "You should fear for your life, your life is in danger," and striking him with a vehicle when exiting the driveway), ¶ 44 (stating that "if you don't sign a contract soon, you won't be around much longer" while making a gesture of a gun pointing at his head), ¶ 58 (stating that plaintiff was on a "hit list"). Threatening to file false administrative complaints also is independently unlawful under Missouri law, and further provides a factual basis for defendants' alleged attempted extortion. I.S. Joseph Co., Inc. v. Jay Lauritzen A/S, 751 F.2d 265, 267 (8th Cir. 1984).

Furthermore, unlike Brennan, defendants did not have an established collective bargaining agreement with plaintiff that provided their members with rights under section 7 of the NLRA. 29 U.S.C. § 157 (enumerating the rights of "employees" to self-organize and collectively bargain with an employer through representation of their choosing). The terms of the collective bargaining agreement in Brennan formed the basis of the plaintiff employees' asserted rights, and the NLRB had explicitly adjudicated the type of conduct in which the defendant had engaged to be unfair labor practice. 973 F.2d at 647. In that event, the court would need to interpret the NLRA and apply the NLRB's decision to find the defendant's conduct to be unlawful. Here, in contrast, the NLRA allows voluntary

pre-hire collective bargaining agreements in the construction industry, but does not establish a right to obtain a collective bargaining agreement from an unwilling employer. 29 U.S.C. § 158(f). Defendants' conduct that is independently unlawful under Missouri law and supports plaintiff's claim of a Hobbs Act violation as acts involving "actual or threatened force, violence or fear," thus, is not preempted without an arguable violation of a provision of the NLRA. 18 U.S.C. § 1951(b)(2); see Doc. #60, ¶¶ 40-61, 63, 65, 81-84, 90. These actions are alleged to have occurred across a span of sixteen months, between February 17, 2012 and June 11, 2013, and so qualify as a closed period of repeated conduct across a substantial period of time to satisfy the continuity requirement for plaintiff's RICO claims.[2] See United States v. Hively, 437 F.3d 752, 761 (8th Cir. 2006) (defining a "substantial period of time" for the continuity requirement in RICO to be "a period of time lasting at least one year").

Defendants' activities that arguably constitute threats, coercion or restraint targeted toward neutral parties to attempt to force those third parties to cease from conducting business with plaintiff, however, are prohibited labor activities under the NLRA and would thus be preempted. § 158(b)(4)(ii)(B). These activities include the notification to customers of plaintiff of an "adversarial" relationship between the parties, Doc. #60, ¶ 39, "threatening" or defamatory letters or other communication to actual or potential clients of plaintiff directly or indirectly asking them to refrain from employing plaintiff, Doc. # 60, ¶¶ 62, 64, 66, 68-70, 72-79,

---

[2] Defendants have also argued that plaintiff has failed to state a pattern of racketeering activity, because its complaint pleads only a single scheme against a single victim. However, in H.J. Inc. v. Nw. Bell Telephone Co., 492 U.S 229, 240-41 (1989), the Supreme Court expressly disapproved of the "multiple scheme" test formerly adopted by the Eighth Circuit. Instead, a plaintiff must prove closed or open ended continuity to establish a pattern of racketeering activity in support of a RICO claim. Id. at 241. In contrast to the first amended complaint, plaintiff has satisfied the continuity requirement here.

87-89, 91, 93, Doc. # 64, Exs. 2-10, and the placement of barricades blocking ingress and egress to plaintiff's customers' places of business, Doc. #60, ¶¶ 67, 86, 92. [3] The NLRB may find these acts are First Amendment protected activity rather than violations of section 8, but they are arguably unfair labor practices under the NLRA based on the allegations in the pleadings. Interpretation of the NLRA is necessary as to these factual allegations; therefore, the NLRB is the primary tribunal to adjudicate a claim based on this underlying conduct. See Mariah Boat, Inc., 19 F. Supp. 2d at 899-900 ("The Garmon doctrine preempts other federal statutes when the underlying conduct is actionable *only* by virtue of the NLRA.") (emphasis in original).

### 3. First Amendment

Defendants also argue that some of their alleged conduct is protected by the First Amendment. However, the conduct arguably protected as free speech has been preempted under Garmon. The remaining acts that provide a basis for defendants' alleged attempt to obtain property from plaintiff by "wrongful use of actual or threatened force, violence, or fear" are not protected by the First Amendment. See, e.g. Virginia v. Black, 538 U.S. 343, 359 (2003) (stating that

---

[3] Plaintiff argues that the NLRB has reached a "clear determination that [bannering] activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts," so these acts are not preempted by Garmon. However, in the NLRB decision cited by defendants, Carpenters Local No. 1506 (Eliason & Knuth of Arizona, Inc.), 355 NLRB No. 159, 189 LRRM 1041 (2010), the Board found that the display of large stationary banners placed on public sidewalks or right-of-ways announcing a labor dispute and seeking to shame the employer were not unfair labor activities under § 8(b)(4)(ii)(B). Here, plaintiff alleged the signs posted by defendants were blocking or interfering with ingress and egress. These actions are arguably in violation of section 8 of the NLRA. See, e.g., Carpenters Local No. 1506 (AGC San Diego Chapter), 355 NLRB No. 191, 189 LRRM 1290 (2010) (finding the bannering activity to not be in violation of section 8 in part because "[a]t no time did they physically block the ingress or egress of any person wishing to enter or leave . . . nor did they engage in any other activity that could be considered confrontational"). In the NLRB ruling plaintiff obtained in this case to support its contention, likewise, the NLRB director based his determination that the union picketing was not in violation of § 8(b)(4)(ii)(B) on finding that the large stationary banner was placed on a public sidewalk and unaccompanied by any coercive or confrontational conduct. [Doc. #76, Ex. 2]. The allegations of plaintiff's complaint contradict this finding, and provide the basis for the Court's conclusion that Garmon preemption does apply to this conduct.

threats of violence and intimidation are not protected speech); Boos v. Barry, 485 U.S. 312, 326 (1988) (discussing a statute that prohibits activity undertaken to "intimidate, coerce, threaten, or harass" as not in violation of the First Amendment).

Moreover, it is settled that threats of extortion are not protected by the First Amendment "simply because they are verbalized or written." United States v. Bly, 510 F.3d 453, 456 (4th Cir. 2007); see also United States v. Boyd, 231 Fed. Appx. 314, 315-16 (5th Cir. 2007) ("The First Amendment does not protect extortion."); Gresham v. Peterson, 225 F.3d 899, 909 (7th Cir. 2000) (holding that the government may proscribe "threats, extortion, blackmail and the like," notwithstanding "their expressive content"); United States v. Hutson, 843 F.2d 1232, 1235 (9th Cir. 1988) ("It may categorically be stated that extortionate speech has . . . no [constitutional] protection at all.") (quoting United States v. Quinn, 514 F.2d 1250, 1268 (5th Cir. 1975)); United States v. Varani, 435 F.2d 758, 762 (6th Cir. 1970) ("Speech is not protected when it is the very vehicle of the crime itself.") (citing federal statutes prohibiting perjury, bribery, extortion and threats, and conspiracy).    Therefore, the First Amendment does not protect defendants' alleged extortionate conduct.

### 4.    Two Predicate Acts of Racketeering Activity

Defendants further assert that plaintiff's RICO claims fail, because plaintiff fails to plead two specific predicate acts for each defendant.  To demonstrate a pattern of racketeering, a plaintiff must allege "two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'"  Crest Const. II, Inc. v. Doe, 660 F.3d 346, 356 (8th Cir. 2011) (quoting

Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009)).  Alleging two predicate acts in the aggregate is insufficient.  Instead, a plaintiff must allege each individual defendant committed two predicate acts of racketeering.  Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1027 (8th Cir. 2008); Aetna Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1560 (1st Cir. 1994); United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987).  As the Second Circuit has explained, the focus of a pattern of racketeering activity "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise."  Persico, 832 F.2d at 714.

Plaintiff's remaining allegations that are not preempted by the NLRA fail to allege two predicate acts for each named individual defendant.  First of all, as in its previous complaint, plaintiff continues to fail to describe the involvement of Paul Higgins, Al Bond, or Terry Nelson as participants in the enterprise's racketeering activities.  Plaintiff merely alleges that each of the individual defendants "participated in, authorized, or ratified the racketeering activity."  Also, defendants state that one of the named individual defendants, Tod Wingbermuehle, is not a person.[4]  Moreover, in multiple allegations of the complaint, plaintiff generically asserts acts in which "an individual defendant or an individual under the control of defendants" engaged.  These claims focus on the collective activities of the members of the enterprise, rather than the individual patterns of racketeering activity engaged in by each defendant.  See Persico, 832 F.2d at 714.  The other defendants in this action are named only once, twice within a short period of time, or cited more generally as persons to whom a vehicle was registered of which the

---

[4] Defendants state that "TOD" refers to "transfer on death," in connection with the title to the Chevrolet Impala referred to in paragraph 46 of the complaint.

unnamed driver or passenger participated in some extortionate conduct. Such "various and sundry boilerplate allegations . . . fail to meet the requirement of identifying two specific predicate acts for each defendant." Crest Const. II, Inc., 660 F.3d at 358 (quoting Crest Constr. II, Inc. v. On Time Auto, No. 07-0728-CV-W-DGK, 2010 WL 3456690,*4 (W.D. Mo. Aug. 27, 2010)). For the above reasons, plaintiff has failed to demonstrate the individual defendants engaged in a pattern of racketeering activity.

At this point, the only remaining defendant with respect to the RICO claim is the CDC. The Eighth Circuit has held that for purposes of a RICO claim under § 1962(c), a corporation may serve as a "person." Fogie v. THORN Americas, Inc., 190 F.3d 889, 896-97 (8th Cir. 1999) (citing 18 U.S.C. § 1961(3) (defining "person" as including "any individual or entity capable of holding a legal or beneficial interest in property")). However, even granting that the CDC, an unincorporated association, likewise qualifies as a person for a § 1962(c) RICO claim, the CDC as a sole named defendant is not sufficiently distinct from the alleged enterprises, the Carpenters Enterprise and the Carpenters Fund Enterprise, so to establish a claim. See United Healthcare Corp. v. Am. Trade Ins. Co., Ltd., 88 F.3d 563, 571 (8th Cir. 1996) (stating that the enterprise must be distinct from the person named as the RICO defendant, as well as distinct from the alleged pattern of racketeering activity); see also Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991) (holding that an entity cannot be both an enterprise and a defendant for purposes of section 1962(c)).

Because plaintiff has failed to establish a pattern of racketeering activity, a prerequisite for a RICO claim under § 1962(a)-(c), Count I is dismissed for failure

to state a claim.  Counts II, III and IV of plaintiff's complaint are premised on an alleged conspiracy to violate subsections (c), (a), and (b) of RICO.  Section 1962(d) conditions liability for a conspiracy to violate RICO on pleading an underlying violation of subsections (a), (b), or (c).  § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.").  Because plaintiff does not adequately allege a pattern of racketeering activity to establish a right of relief under § 1962(a)-(c), it therefore also fails to allege a violation of § 1962(d).  <u>Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.</u>, 187 F.3d 941, 954 (8th Cir. 1999) (holding that a civil conspiracy claim under § 1962(d) is dependent upon an underlying claim of racketeering activity).  Counts II, III and IV therefore also are dismissed for failure to state a claim.  Thus, plaintiff's RICO claims are dismissed in their entirety.

### B.  State Law Claims

Defendants also argue that plaintiff's state law claims are subject to dismissal either pursuant to <u>Garmon</u> preemption or for failure to state a claim upon which relief may be granted.  In the instant motion, defendants have not challenged Count VIII of plaintiff's second amended complaint in the instant motion, which alleges a violation of section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 158(b)(4), against the CDC.  Federal district courts have original jurisdiction over claims brought under the LMRA pursuant to 29 U.S.C. § 187.  Therefore, even though plaintiff's RICO claims have been dismissed, the Court may continue to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### 1.    Tortious Interference with Business Relations

Defendants allege that plaintiff's claim of tortious interference with a valid and substantial business expectancy is preempted by the NLRA, because it is lawful, protected labor activity, or, in the alternative, arguably in violation of § 8(b)(4)(ii)(B) as an unfair labor practice. The same factual allegations found preempted for plaintiff's RICO claims are again alleged and incorporated into Count V. See Doc. #68 (stating that ¶¶ 58, 62, 66-70, 72-79, 85-89 and 92-93 establish the business expectancies with plaintiff's customers with whom defendants interfered). As stated above, defendants' activities that arguably constitute threats, coercion or restraint targeted toward neutral third parties to attempt to force those parties to cease from conducting business with plaintiff are expressly prohibited labor activities under the NLRA, thus invoking preemption. § 158(b)(4)(ii)(B). The arguable NLRA violation and state tort alleged here arise from the same factual setting and the respective controversies presented to the Court and NLRB would be substantially the same. Sears, Roebuck & Co., 436 U.S. at 196-97. Thus, whether such "bargaining tactics interfere unlawfully with an employer's business is to be determined by the NLRB." Falls Stamping & Welding Co. v. Int'l Union, United Auto. Workers, Aerospace & Agric. Implement Workers of America, Region II, 744 F.2d 521, 524 (6th Cir. 1984).

Preemption is even more applicable here, where the claim is premised on state law rather than federal law. See Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983) ("[S]tate regulations and causes of actions are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]."); In re Sewell, 690 F.2d 403, 408 (4th Cir. 1982) ("State law which is invoked to redress conduct prohibited by section 8 of the [NLRA] falls squarely

within <u>Garmon</u>'s doctrine of preemption."). Allowing this state claim, arising out of a labor dispute, to proceed would "threaten undue interference with the federal regulatory scheme" established by Congress in enacting the NLRA. <u>Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25</u>, 430 U.S. 290, 302 (1977). Therefore, plaintiff's claim of tortious interference with business relations is preempted by the NLRA, and Count V is dismissed.

### 2. Civil Conspiracy

Defendants argue that plaintiff's civil conspiracy claim should be dismissed, because plaintiff has failed to allege underlying wrongful conduct that is not preempted by <u>Garmon</u> to give rise to the claim. To allege civil conspiracy, a plaintiff must establish the following elements: (1) two or more persons; (2) an objective; (3) a meeting of the minds as to the objective or course of action; (4) one or more unlawful acts; and (5) damages. <u>Lyn-Flex West, Inc. v. Dieckhaus</u>, 24 S.W.3d 693, 700 (Mo. Ct. App. 1999). Plaintiff has sufficiently pled each of these elements. "The unlawfulness of a conspiracy may be found either in the end sought or the means used." <u>Schott v. Beussink</u>, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997) (quoting <u>Adams Dariy, Inc. v. Burke</u>, 293 S.W.2d 281, 290 (Mo. 1956)). As provided above, plaintiff has properly pled extortion under the Hobbs Act. Sufficient allegations remain, outside of the arguable NLRA violations preempted under <u>Garmon</u>, to establish an underlying claim of extortion so to support a claim of civil conspiracy. Therefore, Count VI will not be dismissed.

### 3. Injurious Falsehood

Defendants also argue that plaintiff's claim for injurious falsehood based on alleged false representations defendants made to plaintiff's customers and

regulatory agencies should be dismissed for failure to state a claim.[5]  Specifically, defendants claim plaintiff fails to plead special damages in the form of specific lost business dealings, as required by Missouri law.

In Missouri, which follows the Restatement (Second) of Torts, a plaintiff "must establish proof of pecuniary loss as an element of a claim for damages for injurious falsehood." State ex rel. BP Prods. N. Am. Inc. v. Ross, 163 S.W.3d 922, 928-29 (Mo. banc 2005) (quoting Annbar Assocs. v. Am. Express Co., 565 S.W.2d 701, 708 (Mo. Ct. App. 1978)).  Pecuniary loss refers to economic damages.  Ross, 163 S.W.3d at 929.  Pecuniary loss may be established by "proof of the conduct of specific persons" or "proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify."  Annbar Assocs., 565 S.W.2d at 708 (quoting Restatement (Second) of Torts § 651(h) (presently set forth in § 633)). The latter is known as "loss of the market," and is analogous to lost profits resulting from breach of contract.  Id.  Under Missouri law, the "general rule is that 'general damages' are those that flow as a natural and necessary result of the act complained of and that 'special damages' are damages which actually result from the act by reason of the special circumstances of the case and not as a necessary result of the act."  Porter v. Crawford & Co., 611 S.W.2d 265, 271 (Mo. Ct. App.

---

[5] Unlike its arguments for dismissal of the other counts, defendants do not argue that plaintiff's claim of injurious falsehood is preempted by the NLRA.  Preemption would not apply here, because the state tort law claim involves a higher standard of proof than an alleged unfair labor practice premised on the same factual allegations.  See Linn v. United Plant Guard Workers of Am., Local 114, 383 U.S. 53 (1966) (refusing to find a state law defamation claim preempted by the NLRA).  A claim of injurious falsehood must allege that a defendant has knowledge or reckless disregard of the falsity of the statement made, while the same statement would violate labor practices simply if it was misleading or coercive. Farmer, 430 U.S. at 299 (citing Linn, 383 U.S. at 63).  A departure from application of the preemption doctrine set forth in Garmon is permissible when there is "little risk that the state cause of action would interfere with the effective administration of national labor policy." Farmer, 430 U.S. at 298.

1980).  "If special damages are alleged, the pleading must set forth the factual matters that give reasonable notice of the nature and extent of the claim."  Id.

As the Court noted in its earlier decision, plaintiff has set forth adequate factual allegations that defendants took actions that adversely affected its business. Raineri Construction, LLC, 2014 WL 348632 at *2.  These allegations give defendants reasonable notice of the nature and extent of the claim, Porter, 611 S.W.2d at 271, and are "sufficient to show economic loss, especially at this early stage of litigation."  Raineri Construction, LLC, 2014 WL 348632 at *2 (citing Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002)).  Count VII, therefore, may proceed.

* * *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss [Doc. #63] is **granted as to Counts I-V** of the second amended complaint and **denied in all other respects**.

_____
**CAROL E. JACKSON**
**UNITED STATES DISTRICT JUDGE**

Dated this 24th day of October, 2014.